**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| In re: | ) | |
| North Shore Manor, Inc | ) | Case No. 23-10809 JGR |
| Debtor. | ) | Chapter 11 |

**UNITED STATES TRUSTEE'S OBJECTION TO CONFIRMATION**

The United States Trustee ("UST"), by and through his undersigned counsel, hereby objects to confirmation of the *Sub-Chapter V Plan of Reorganization Dated July 12, 2023 (Docket #273)*. For his Objection, the UST states and alleges as follows:

1. On March 6, 2023, North Shore Manor, Inc. ("**Debtor**") commenced a bankruptcy case under Subchapter V of Chapter 11 of Title 11 of the United States Code.[1]

2. The UST appointed Joli A. Lofstedt as the Subchapter V Trustee.

3. The Debtor continues to manage its affairs as a debtor-in-possession pursuant to Sections 1107 and 1108.

4. On July 12, 2023, the Debtor filed a *Sub-Chapter V Plan of Reorganization Dated July 12, 2023 (Docket #273)* (the "**Plan**").

5. For the reasons that follow, the UST objects to confirmation of the Plan.

### Objections

6. *Definition of Exculpated Claims (p.11)*: The definition of an "Exculpated Claim" in the Plan includes a temporal limitation that extends "prior to" the Petition Date.[2] The UST believes this is a typo, intended to reference a time beginning at or after the Petition Date. To the extent this was intended, the UST objects that the proper temporal limitation for the exculpation provision should be after the Petition Date, not before.

7. *Class 4 Voting*: The Debtor has identified a Class 4A and Class 4B in the Plan. It is not clear how these two sub-classes will be treated for purposes of determining whether Class 4 has voted in favor of the Plan. Will each sub-class be calculated on its own or collectively with the other sub-class for purposes of satisfying the voting requirements? The Debtor should amend the Plan to clarify this issue. The UST recommends that each sub-class be treated as a separate class

---

[1] Unless otherwise indicated, all chapter and section references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure.

[2] For purposes of this Objection, any capitalized term not otherwise defined is using the definition of that term as described in the Plan.

1

for voting purposes.

8. *Payments to Unsecured Creditors*: The Plan contains conflicting information about the amount unsecured creditors will be paid from the funds deposited in the Unsecured Creditor Account. Section 6.1(a) states that the funds deposited into the Unsecured Creditor Account will be used to pay any unpaid Allowed Administrative Claims until paid in full before any payments are made to the Class 4(a) unsecured creditors. Meanwhile, the Financial Projections (Exhibit F) and the Debtor's discussion concerning the advantages of the Plan over a Chapter 7 liquidation (p.26) clearly indicate that all of the funds deposited into the Unsecured Creditor Account will be paid to Class 4(a) creditors. This is a significant issue since the total Administrative Claims at the time of confirmation are projected to be at least $630,000. (*See* Plan, p.7). If the funds deposited into the Unsecured Creditor Account are to be used to pay Administrative Claims, then those payments could utilize all funds in the Unsecured Creditor Account for the first 3 ½ years of the Plan. Moreover, the Class 4(a) creditors would receive less than ½ of the amount the Plan indicates they will receive. The UST objects to request that the Plan be amended to resolve this contradiction and offer Class 4(a) creditors a clear picture of the funds they can expect to receive under the Plan.

9. *Liquidation Analysis (Exhibit A)*: The Liquidation Analysis appears to be incomplete. The analysis makes reference to footnotes to explain the calculations. However, many of the footnotes simply state "See attached Schedule," without there being a schedule attached. For instance, footnote 6 is referenced in support of the Debtor's calculation of there being between $801,906 to $1,140,906 in administrative expenses that will have to be paid from a Chapter 7 estate, but there is no attachment showing the Debtor's calculation of those administrative expenses. The Debtor should amend the Plan to include the supporting attachments.

10. *Proceeds of Avoidance Actions and the Wilson Preserved Claims*: In the Plan, the Debtor asserts a reservation of the right to bring Avoidance Actions and the Wilson Preserved Claims. However, the Plan is not clear on whether the proceeds received from the litigation of those claims will be distributed to the Class 4(a) creditors under the Plan. The Debtor should amend the Plan to clarify how any proceeds of the Avoidance Actions or Wilson Preserved Claims will be distributed under the Plan. Furthermore, if the Debtor is not proposing to pay the proceeds into the Unsecured Creditor Account for the benefit of unsecured creditors, then further inclusion and discussion of those potential claims is needed as part of the Liquidation Analysis. In the discussion of the Liquidation Analysis (p.25), the Debtor discounts the impact that any proceeds from litigation claims might have by stating that they will "have the same value in a Chapter 7 as a Chapter 11." But that statement is inaccurate, or at least incomplete, if the Debtor is not proposing to use the proceeds to pay creditors in the Chapter 11 case to the same extent that they would be paid out to creditors in a Chapter 7. This is a significant issue given the size of the potential claims, which include transfers of $5,166,829 to insiders within the year prior to the Debtor's bankruptcy filing. The UST objects that the analysis of the best interest of creditors under 11 U.S.C. § 1129(a)(7) cannot be completed until the Plan is amended to incorporate this additional information.

11. *Sale Process:* The Debtor proposes an option to repay creditors by selling substantially all of its assets, in support of which the Debtor attaches a set of Bid Procedures (Exhibit E) that will govern the process of the sale. The UST does not oppose this process in general, but requests a few additional protections. First, the UST is concerned that there is no limit on the break-up fee amount for the stalking horse bidder. Without such a limit, the break-up fee

could be utilized to chill competitive bidding, thereby ensuring that the sale goes to the stalking horse bidder. The UST requests that a limitation be added to the Bidding Procedures to address this issue in the form of a cap on the break-up fee of no more than 3% of the total sale price. Though, to be clear, nothing in the bidding procedures should require the Debtor to agree to a break-up fee of any amount. Second, the UST is concerned that the Bid Procedures do not offer any protections if a bidder at the sale is an insider, or entity owed by or affiliated with an insider. The UST requests that the Bid Procedures be revised to require disclosure of any such relationship status of any Qualified Bidder to the Debtor, the Broker, and all Qualified Bidders participating in the sale process. Absent such additional protections, the UST objects that the sale process envisioned by the Plan does not satisfy the good faith requirements of 11 U.S.C. § 1129(a)(3).

12. *Distributions by Subchapter V Trustee*. The Plan provides for the Debtor to establish and make distributions from the Unsecured Creditor Account for the payment of the Class 4(a) claims. The UST objects, pursuant to 11 U.S.C. § 1194(b), that language should be added to provide for the Subchapter V Trustee to make the payments to creditors under the Plan, including the distributions from the Unsecured Creditor Account, in the event that the Plan is confirmed under Section 1191(b).

13. *Final Decree*. Section 8.8 (p.18) of the Plan provides that the "Debtor will request entry of a final decree closing the case on or before the later of the date all Claim objections and any pending litigation is concluded or one hundred eighty (180) days after the Effective Date of the Plan or as otherwise required pursuant to orders of the Bankruptcy Court and the Bankruptcy Code and Bankruptcy Rules, or such other time as is appropriate under the proceedings of the case." In the event of a non-consensual confirmation, the Subchapter V Trustee will continue to serve, and will not be discharged, until completion of al payments under the Plan. *See* 11 U.S.C. § 1183(c)(1) (providing for discharge of the trustee prior to plan completion only when plan confirmed on consensual basis under 11 U.S.C. § 1191(a)). Accordingly, the UST objects that an additional provision is needed to specify that in the event of a nonconsensual confirmation, the final decree will not be requested until completion of payments under the Plan and discharge of the Subchapter V Trustee.

14. *Typographical Errors*: The UST has noted any typographical errors observed within the Plan such that they may be corrected in any amendments thereto, as follows:
    a. Plan, Section 9.4: This provision includes a reference to Class 8, which does not exist.
    b. Exhibit E, ¶2: This sentence appears to be cut off and missing pertinent information.
    c. Exhibit E, ¶16: This paragraph references the sale of "Lots," which does not seem applicable to the Debtor.

WHEREFORE, the United States Trustee prays this Court deny confirmation of the Plan, and for such further relief as the Court deems just and proper under the circumstances.

Dated: August 3, 2023.                                             Respectfully submitted,

                                                                                  PATRICK S. LAYNG

UNITED STATES TRUSTEE

<u>/s/ R. Samuel Boughner</u>
By: R. Samuel Boughner, #AR2010272
Trial Attorney for the U.S. Trustee
1961 Stout Street, Suite 12-200
Denver, CO 80294
(303) 312-7252
(303) 312-7259 fax
Samuel.Boughner@usdoj.gov