UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: | ) |
| | ) Case No. 23-10809-JGR |
| NORTH SHORE MANOR, INC., | ) |
| | ) Chapter 11 |
| Debtor. | ) |

**DEBTOR'S OBJECTION TO COLUMBINE MANAGEMENT SERVICES, INC.'S MOTION FOR RELIEF FROM STAY FOR MOVANT'S LEASED COPIERS**

North Shore Manor, Inc., Debtor-in-Possession (the "Debtor"), by and through its attorneys, Wadsworth Garber Warner Conrardy, P.C., for its Objection to Columbine Management Services, Inc.'s ("CMS") Motion for Relief from Stay for Movant's Leased Copiers (the "Stay Motion") respectfully states as follows:

## BACKGROUND

*The Debtor's Bankruptcy Case*

1. The Debtor filed for relief under Subchapter V of Chapter 11 of the Bankruptcy Code on March 6, 2023 (the "Petition Date").

2. On July 12, 2023, the Debtor filed its Sub-Chapter V Plan of Reorganization (the "Plan"). Docket No. 273.

3. The United States Trustee and CMS (and related parties) filed formal objections to the Plan and Health and Human Services provided informal comment to the Plan (the "Plan Objections").

4. The Debtor requested, and the Court has granted the Debtor time to file an Amended Plan in an effort to resolve some or all of the Plan Objections.

*Management Agreement with CMS*

5. The Debtor is a skilled nursing facility located in Loveland, Colorado.

6. Prior to the Petition Date, CMS provided management services to the Debtor pursuant to a certain Management Agreement.

7. To the extent, if any, that it proves relevant to the Court's determination of the Stay Motion, contrary to CMS's continued assertion in the Stay Motion, as the Court found in its Minute Order at Docket No. 139 following the conclusion of the preliminary hearing on the Debtor's

Motion for Approval of Interim Compensation Procedures, the Management Agreement was deemed rejected as of April 14, 2023—it was not terminated prior to the Petition Date.

*Lewan Copy Machines*

8. In connection with the Management Agreement, CMS claims to have leased copy machines from Lewan & Associates, Inc. and placed copiers at the Debtor's nursing facility.

9. In the Stay Motion, CMS identifies eight Lewan copy machines it contends were placed at the Debtor's nursing facility (the "Leased Copiers").

10. The Debtor possesses five copy machines (the "Copy Machines"), only two of which have serial numbers matching the Leased Copiers subject of the Stay Motion (the "Two Copiers").

11. As shown on <u>Exhibit A</u> attached hereto, the Debtor has been charged back approximately $2,116.14 each month since September 2019 for the lease payments due on the Copy Machines (or at least the Two Copiers), for a total of approximately $83,794.80.

12. The Debtor uses the Copy Machines in connection with its day-to-day business operations, including the Two Copiers.

**BASIS FOR OBJECTION**

13. Section 362(a) of the Bankruptcy Code operates to stay, among other things, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . any act to create, perfect, or enforce any lien against property of the estate [and] any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(3), (4) and (6).

14. The legislative history of Section 362 indicates that Congress intended that the scope of the automatic stay be sweeping in order to effectuate its protective purposes on behalf of both debtors and creditors:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840-41, 5963.

15. Accordingly, the automatic stay affords a debtor fundamental protections under the bankruptcy laws. *See* H.R. Rep. No. 95-595, at 340 (1977); *Midlantic Nat'l Bank v. NJ. Dept. of Envt'l Protectio*n, 474 U.S. 494, 503 (1986). It is designed, *inter alia*, to give the debtor a "breathing spell" after the commencement of a chapter 11 case, shielding debtors from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring. *See, e.g., SJ. Acquisition, Inc. v. Eastway Delivery Service, Inc.* (*In re S.I. Acquisition, Inc.*), 817 F.2d 1142, 1146 (5th Cir. 1987) (stating that the automatic stay "imposes a moratorium on all actions against the debtor or its property and assets" and thereby "ensures a respite for the debtor so that it may attempt to reorganize or decide to liquidate and promotes the overriding policy of equal distribution of a debtor's assets among creditors"); *Taylor v. Slick*, 178 F.3d 698, 702 (3rd Cir. 1999).

16. The automatic stay broadly extends to all matters which may have an effect on a debtor's estate enabling bankruptcy courts to ensure that debtors have the opportunity to rehabilitate and reorganize their operations. *See, e.g., Manville Corp. v. Equity Security Holders Comm.* (*In re Johns-Manville Corp.*), 801 F.2d 60, 62, 63-64 (2d Cir. 1986); *see also Fidelity Mortgage Inv. v. Camelia Builders, Inc.*, 550 F.2d 47, 53 (2d Cir. 1976) ("Such jurisdiction is necessary to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.").

17. Section 362(d) of the Bankruptcy Code provides the following bases for granting a creditor relief from the automatic stay. First, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -- (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . ." 11 U.S.C. § 362(d)(l). Second, relief may be granted "with respect to a stay of an act against property under subsection (a) of this section, if -- (A) the debtor does not have any equity in such property; and (B) such property is not necessary to an effective reorganization . . . ." 11 U.S.C. § 362(d)(2).

18. CMS argues that (1) cause exists under Bankruptcy Code § 362(d)(1) because the Debtor "does not own and has no license or right to use the Leased Copiers" and "has not compensated CMS for the use of the Leased Copiers;" and (2) that relief from stay is warranted under Bankruptcy Code § 362(d)(1) and (d)(2) because the Debtor "has no equity in the Leased

Copiers" and "the Leased Copiers are not necessary for an effective reorganization because [the Debtor] cannot effectively reorganize."

19. As a preliminary matter, the Debtor cannot return property it does not possess. As stated above, while CMS seeks relief from the stay to allow it to remove and recover the eight Leased Copiers, the Debtor possesses only two copy machines with serial numbers matching those listed in the Stay Motion. Even if CMS could prove itself entitled to relief from the stay, which it cannot for the reasons discussed below, the Debtor cannot return all eight of the Leased Copiers, as it only possesses two.

20. Though the Debtor acknowledges that it does not own the Two Copiers, it disputes the veracity of CMS's assertions that the Debtor "has not compensated CMS for the use of the Lease Copiers" and that the Debtor lacks equity in the Leased Copiers or at least the Two Copiers.

21. The Debtor has, in fact, paid CMS approximately $2,116.14 each month since September 2019 in exchange for its use of the Leased Copiers or at least the Two Copiers. *See* Exhibit A.

22. The September 26, 2019 Technology Sales Order ("Sales Order") attached to the Stay Motion provides for CMS's lease from Lewan of 31 xerox machines, with a 48-month lease term for a sub total of $11,399.00. None of the serial numbers for copy machines purportedly located at "Northshore," as set forth in the documentation attached to the Stay Motion, match those of the Leased Copiers. Thus, it is impossible to determine from the Sales Order and other documents attached to the Stay Motion what amount CMS was obligated to pay Lewan for the Leased Copiers or at least the Two Copiers, so the Debtor cannot say with certainty whether its monthly payments exceed the lease obligations with respect to the Leased Copiers or at least the Two Copiers. The Debtor cannot even determine if it is looking at the correct or full lease agreement.

23. However, the Debtor can say with certainty that the Debtor's monthly payments over the course of the last four years have created equity in the Leased Copiers or at least the Two Copiers, to the tune of nearly $85,000.00.

24. Granting CMS relief from the stay to remove and recover the two Leased Copiers would deprive the Estate of the equity created by the Debtor's payments, providing a windfall to CMS to the detriment of the Debtor's creditors. The Debtor may well be able to purchase the Leased Copiers or at least the Two Copiers for Lewan.

25. Moreover, the Copy Machines are necessary for an effective reorganization. The Debtor routinely utilizes the Lewan Copy Machines in connection with its day-to-day business activities, and the Copy Machines are thus necessary to the Debtor's effective reorganization.

26. If relief from the stay is granted with respect to the Two Copiers in the Debtor's possession, not only will the Debtor lose the equity it created, but it will also be forced to devote time and capital to acquiring replacement copiers. The Debtor anticipates the process of acquiring replacement copy machines will involve down payments and new payment terms, which will likely include higher monthly payments and longer lease terms. Requiring the Debtor to obtain replacement copy machines under these circumstances will reduce the funds available for payments to the Debtor's unsecured creditors.

27. Lease agreements such as the one between CMS and Lewan often include a "pay off" provision that allows the lessee to purchase the copy machine before the lease contract expires with credit given to the payments made during the lease term. Given the equity created by the Debtor's payments, the Debtor should be permitted to either assign the lease or "pay off" the remaining balance on the Leased Copiers or at least the Two Copiers so that it receives credit for its prior payments and can continue to utilize the Leased Copiers or at least the Two Copiers without further interruption.

28. CMS asserts, without any supporting evidence or argument, that the Debtor "cannot effectively reorganize." As stated above, the Debtor has already filed a feasible plan of reorganization and will soon file an amended plan, which it believes will resolve many of the Plan Objections. There is no evidence that the Debtor cannot confirm a Plan and CMS' conclusory statement should not be accepted by the Court.

29. For these reasons, CMS has not, and cannot, establish that it is entitled to relief from stay pursuant to Bankruptcy Code §§ 362(d)(1) or (d)(2), and the Stay Motion should therefore be denied.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court deny the Stay Motion and grant the Debtor such further and additional relief as to the Court may appear proper.

DATED: September 26, 2023          Respectfully submitted,

By: /s/ Aaron A. Garber
Aaron A. Garber #36099
**Wadsworth Garber Warner Conrardy, P.C.**
2580 West Main Street, Suite 200
Littleton, CO 80120
Telephone: (303) 296-1999
Telecopy: (303) 296-7600
Email: agarber@wgwc-law.com

## CERTIFICATE OF SERVICE

The undersigned certifies that on September 26, 2023, I served by ECF a copy of the **DEBTOR'S OBJECTION TO COLUMBINE MANAGEMENT SERVICES, INC.'S MOTION FOR RELIEF FROM STAY FOR MOVANT'S LEASED COPIERS** on all parties against whom relief is sought and those otherwise entitled to service pursuant to FED.R.BANKR.P. and these L.B.R. at the following addresses:

Robert Samuel Boughner    Samuel.Boughner@usdoj.gov
Zachary Fairlie    zfairlie@spencerfane.com, lwhitaker@spencerfane.com
Joli A. Lofstedt    joli@jaltrustee.com, ecf.alert+Lofstedt@titlexi.com,brenda@jaltrustee.com
John A. O'Brien    jobrien@spencerfane.com, anissly@spencerfane.com;john-obrien-2146@ecf.pacerpro.com
Keri L. Riley    klr@kutnerlaw.com, vlm@kutnerlaw.com
Scott C. Sandberg    ssandberg@spencerfane.com, anissly@spencerfane.com;dperea@spencerfane.com;scott-sandberg-3708@ecf.pacerpro.com
US Trustee    USTPRegion19.DV.ECF@usdoj.gov

                                  */s/ Nichole Garber*
                                  For Wadsworth Garber Warner Conrardy P.C.