# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO
Bankruptcy Judge Joseph G. Rosania, Jr.

| | |
|---|---|
| In re:<br><br>NORTH SHORE MANOR, INC.,<br>EIN: 84-0660666<br><br>    Debtor. | Case No. 23-10809-JGR<br>Chapter 11 |

## ORDER TO RESPOND TO FOURTH PATIENT CARE OMBUDSMAN REPORT AND NOTICE FOR POTENTIAL DISMISSAL OF CHAPTER 11 CASE

THIS MATTER is before the Court sua sponte regarding the Fourth Report of Patient Care Ombudsman dated September 27, 2023 (Doc. 330), and the status of this Chapter 11 case.

On March 6, 2023, North Shore Manor ("the Debtor") filed a voluntary Chapter 11 case under 11 U.S.C. § 1181 *et seq*., Subchapter V. The Debtor operates a skilled nursing facility ("the facility") in Loveland, Colorado with 120 beds and is a health care business as that term is defined in 11 U.S.C. § 101(27A). The filing of the case resulted in the appointment of a Patient Care Ombudsman ("Ombudsman") under 11 U.S.C. § 333 to monitor the quality of patient care and represent the interests of the patients of the health care business. Although the statute is silent, if the Ombudsman finds the quality of care is substandard, the court can enter whatever orders are justified, including an order dismissing the bankruptcy case.

The Ombudsman is a division of the Colorado Department of Public Health and the Environment ("CDPHE"). The Ombudsman provided four reports to the Court regarding the facility dated: April 11, 2023, (Doc. 163), June 8, 2023 (Doc. 265), August 2, 2023 (Doc. 287), and September 27, 2023 (Doc. 330). The reports have shown a significant decreasing level of care for the residents and most recently, referenced obstruction from an employee into the efforts of the Ombudsman to monitor the care, which has caused serious concern from the Ombudsman and the Court.

The second report of the Ombudsman filed on June 8, 2023, concluded that the Ombudsman had complaints from the residents and their family members about the staffing level, timely responses to the call light, bathing once per week, and the overall quality of the care and the dignity of the residents.

The third report of the Ombudsman filed on August 2, 2023, concluded that the Debtor had adequately addressed the concerns of the Ombudsman, and the Court permitted the chapter 11 case to proceed

However, the fourth and most recent report filed on September 27, 2023, concluded the Ombudsman again had serious concerns about the safety of the residents, whether there had been mandatory reporting of instances of abuse and neglect, the quality of care, the quality of life, and willful interference in the Ombudsman carrying out the monitoring duties.

The bankruptcy case presents as a bitter two-party dispute between one group of shareholders and J. Robert Wilson ("Wilson"). In February 2023, Wilson provided a notice of termination of the management agreement under which his company, Columbine Management Services, Inc. ("CMS"), had operated the facility for over forty years. The notice of termination was due to the alleged failure of the other shareholders to recapitalize the Debtor, which prompted the filing of the bankruptcy. On the date of filing, Wilson and his related entities held administrative, secured, and unsecured claims and represents a significant majority of the claims against the estate. The parties have engaged in extensive litigation since the filing of the case, including an emergency adversary proceeding (Case No. 23-01085-JGR) filed by the Debtor seeking injunctive relief for turnover of documents.  The Court has conducted multiple emergency hearings and a still pending discovery dispute arising out of the replacement of CMS as manager of the facility.

The Debtor filed a plan on July 12, 2023 (Doc. 273), to which the United States Trustee, Wilson, and Wilson's companies filed extensive objections. The plan is an unconfirmable plan which provides for extensive third-party releases to the other shareholders, retains all claims against Wilson, indicates the Debtor has not paid rent for the facility for one year, does not identify potential avoidance claims, and appoints current counsel for the Debtor as counsel to pursue any avoidance actions.

The Debtor has incurred hundreds of thousands of dollars in professional fees in the seven months during the pendency of the case and faces a contested confirmation hearing which will dramatically increase such fees, all while the level of care to the residents has significantly decreased. Further, the Court is concerned about the impartiality of Debtor's counsel because of its previous representation of the other shareholders prior to the bankruptcy filing in negotiations attempting to compel Wilson, who is both a shareholder and the primary creditor of the estate, to buy out the other shareholder's interests. Counsel for a Chapter 11 debtor-in-possession assumes a fiduciary role, with responsibilities toward the estate and its creditors, and does not represent the interests of majority shareholders of a corporation. The plan is illustrative of this potential conflict.

The Court questions whether this two-party dispute is a suitable application of Chapter 11 bankruptcy and whether the case should be dismissed under 11 U.S.C § 1112(b)(1) for cause, thus allowing the CDPHE to carry out its state law duties related to

the facility without the presence of a pending bankruptcy case and permitting the parties to continue their litigation in another forum.

The Court views this case as a two-party dispute with interminable litigation and the filing of the bankruptcy case as a litigation tactic. The Debtor alleges Wilson is withholding documents required to manage the facility, while Wilson alleges the remaining shareholders are mismanaging the facility and evading subpoenas. Wilson alleges the Debtor is operating at a loss and that the resident census has dropped below the break-even point of profitability since the bankruptcy filing.

Under these unique circumstances of a two-party dispute over a skilled nursing facility, the operation of which has elicited the very serious concerns of the Ombudsman and the court on the quality of care and the quality of life of the residents identified in detail above, the Court believes that dismissal of this case may be appropriate for cause. The Court shall provide the Debtor its procedural due process rights, including an opportunity to respond and a hearing.

The Court raised the above issues at a hearing in this case on October 3, 2023, indicating that responses would be due on or before October 20, 2023. The Court, having reviewed the situation and being advised in the premises believes additional time is appropriate to allow for adequate responses, accordingly the Court hereby

ORDERS the Debtor to file a response to the Fourth Report of Patient Care Ombudsman dated September 27, 2023, on or before **November 3, 2023,** and

FURTHER ORDERS that on or before **November 3, 2023,** the Debtor shall show cause to the Court as to why this Chapter 11 case should not be dismissed, and

FURTHER ORDERS Wilson and his companies may file a written response to this order on or before **November 3, 2023.**

Dated: October 6, 2023

BY THE COURT:

_____
Joseph G. Rosania, Jr.
United States Bankruptcy Judge

3